BROCKELHURST v. STATE.

Crim. 4060.

Opinion delivered November 29, 1937.

68

*Robt. J. Brown, Jr., E. H. Bostic* and *O. W. (Pete) Wiggins,* for appellant.

*Jack Holt,* Attorney General, and *John P. Streepey,* Assistant, for appellee.

McHANEY, J.   Appellant was charged jointly with Bernice Felton, by information, and convicted of murder in the first degree, for the killing of Victor A. Gates on May 6, 1937, the charging part of the information being as follows:   "The said defendants, Lester W. Brockelhurst and Bernice Felton, on the 6th day of May, A. D., 1937, in Lonoke county, Arkansas, did unlawfully, wilfully, feloniously, with malice aforethought, and after premeditation and deliberation, while in the attempt to commit the crime of robbery, did kill and murder one Victor A. Gates, by then and there shooting him, the said Victor A. Gates, with a certain pistol loaded with gunpowder and leaden balls, which said pistol was then and there had and held in the hands of them, the said Lester

W. Brockelhurst and Bernice Felton, and against the peace and dignity of the state of Arkansas.''

His conviction carried with it the death penalty and the trial court so entered judgment on the verdict. It was a particularly brutal murder and committed for the purpose of robbing the deceased of his car and other personal property at a time when they were riding with him in his car as guest hitchhikers. No contention is made on this appeal that appellant did not commit this crime or that the evidence is insufficient to support the verdict.

The information was filed May 20th, and on May 24th appellant was arraigned, entered a plea of not guilty, and trial was set for June 14, 1937. The court ascertained that the defense of insanity would be interposed, and, acting under the provisions of § 11 of Initiated Act No. 3 of 1936, which will be found in the Acts of 1937, p. 1384 *et seq.*, made an order on June 10, 1937, directing the sheriff of Lonoke county to commit the defendant to the superintendent of the State Hospital for Nervous Diseases, to conduct observations and investigations of the mental condition of defendant and to make written report thereof; and that he be kept under such observation ''for a period not to exceed fifteen days.'' Said section above referred to authorizes the procedure taken, and provides that he shall forthwith be committed to said hospital, ''where the defendant shall remain under observation for such time as the court shall direct, not exceeding one month.'' On June 17, 1937, the acting superintendent of the State Hospital for Nervous Diseases, Dr. Davis, and an assistant physician, Dr. Hollis, made a report in writing to the judge of the trial court, stating they considered appellant sane at that time, and also at the time of the killing of Mr. Gates. Counsel for appellant contend that this was error; that since said act provides that an accused committed to said State Hospital where he shall remain for observation ''for such time as the court shall direct, not exceeding one month,'' requires that he there remain for the full period of one month, and that the court had no authority to commit him, as it did, ''for a period of time, not to exceed fif-

teen days," also, if we understand counsel, it is further contended, that, since the court ordered him to be kept for a time "not to exceed fifteen days," the hospital authorities were required to keep the accused under observation the full fifteen days, even though they should sooner become convinced of his sanity or insanity. We cannot agree with this argument, as the words "not exceeding" in both instances were words of limitation, beyond which time the court could not go in the one instance, and beyond which the hospital authorities could not go in the other.

Acting Superintendent Davis and Dr. Hollis made a joint report of the result of their observation of appellant, and it is contended that this was not in compliance with § 11 of said act 3, which provides: "A written report prepared by the physician or physicians employed by the State Hospital shall indicate separately the defendant's mental condition," etc. Also it is provided: "This report shall be certified by the superintendent or supervising officer of the State Hospital, under his seal, or by an affidavit duly subscribed and sworn to by him before a notary public who shall add his certificate and affix his seal thereto." The further objection is made that the notary failed, at the time, to affix his seal. This was done, by permission of the court, on the day of trial. These objections to the form of the report and the lack of a notarial seal are without substance. This was a substantial, if not a literal, compliance with said Act. Both Drs. Hollis and Davis signed the report. Both certified to his sanity. If they had disagreed about it, then perhaps it would be better to certify to their separate findings.

Another assignment of error relates to the venue of the action. Section 26 of said initiated act 3 provides: "It shall be presumed upon trial that the offense charged in the indictment was committed within the jurisdiction of the court, and the court may pronounce the proper judgment accordingly, unless the evidence affirmatively shows otherwise." It is said this provision shifts the burden to defendant to prove jurisdiction or the lack of

it, and that he was unable to do so because of lack of time allowed to prepare for trial. Whether this act places the burden on defendant to show lack of jurisdiction, we do not now decide. The proof in this record is abundant, if not beyond a reasonable doubt, that the crime was committed in Lonoke county, and venue may be shown by a mere preponderance of the evidence. Such was the law prior to said act 3. So, had appellant been given additional time, he could not have shown to the contrary.

It is also argued that appellant was entitled to a bill of particulars in accordance with § 22 of said act 3. Said section amends § 3028 of Crawford & Moses' Digest by changing and making unnecessary certain contents of indictments and concludes by providing that: "The state, upon request of the defendant, shall file a bill of particulars, setting out the act or acts upon which it relies for conviction." It will be seen from the information filed, above quoted, that it set out in detail "the act or acts" upon which the state relied for a conviction, and contained all the requirements of the former statute to make a good indictment had it been returned by a grand jury. So, appellant had a bill of particulars in the information on which he was tried, and it would have been a useless thing to require another. The court, therefore, properly denied this request.

It is finally insisted that amendment No. 21 to the Constitution of this state, upon which initiated act No. 3 is based, is null and void for the reason that it was improperly advertised and voted on by the people of the state, and that, therefore, all proceedings under its authority are also void. This question was raised in appellant's motion in arrest of judgment. It is contended that the copy of proposed amendment No. 22, which as adopted is now amendment No. 21, attempted to amend § 8 of art. 7 of the Constitution, which is a wholly unrelated subject. Appellant is in error in this contention as the joint resolution passed by both houses of the General Assembly, as published in the Acts of 1935, p. 995, same being House Joint Resolution No. 18, does not propose to amend any section of any article of the Con-

stitution, in terms. This amendment provides: "Section 1. That all offenses heretofore required to be prosecuted by indictment may be prosecuted either by indictment by a grand jury or information filed by the prosecuting attorney." Section 2 provides: "That the General Assembly of Arkansas shall by law determine the amount and method of payment of salaries of prosecuting attorneys." In *Penton* v. *State,* 194 Ark. 503; 109 S. W. 2d 131, we had this amendment under consideration and sustained its validity and held that the provisions thereof relating to the manner of prosecutions, whether by indictment or information, is self-executing, since it supplies a sufficient rule by means of which the duties it imposes may be enforced. We also held that it was not void under the federal Constitution. Regardless of how the Secretary of State "certified out the amendment for publication in the various counties of the state, whether as a part of § 8 of article 7 of the Constitution of 1874, the fact remains that the amendment was adopted by the favorable vote of the people, and the fact that the Secretary of State may have made an error with reference to the section and article to be amended, could make no difference, if in fact it had reference to some other section and article of the Constitution.

Another contention is made that this amendment was not adopted in compliance with § 22 of art. 19, providing the method for amending the Constitution. The closing sentence in this section and article provides: "They (amendments) shall be so submitted as to enable the electors to vote on each amendment separately." This objection seems to be that the Legislature was without power to submit two questions in one amendment. In the first section of this amendment, it is provided that prosecuting attorneys may file information or indictments may be had by grand juries, to charge one with crime. It also provides in § 2 for the directing of the General Assembly to determine by law the amount, method and payment of salaries of prosecuting attorneys. We perceive no objection to this manner or method of amending the Constitution as they both relate to the

prosecuting attorney. We are, therefore, of the opinion that appellant is wrong in this contention.

Some mention is made also on appellant's supplemental motion for a new trial on account of newly-discovered evidence, which has been brought before us by certiorari. The record fails to show that the trial judge considered the supplemental motion for a new trial or that he made any order or ruling thereon. It appears therefrom that certain persons made affidavit and would probably on a new trial give testimony that appellant is insane and has been for many years. We cannot consider this supplemental motion for a new trial because it is not properly before us as a part of the record in this case. It is not a part of the bill of exceptions and cannot be considered by us as we review the proceedings of the lower court for error in the rulings in said court. If the court failed to rule upon this motion, and it did, there is nothing presented for our consideration.

Some mention is also made that the court erred in overruling appellant's motion for a continuance. This may be answered by a quotation from the recent case of *Martin* v. *State,* 194 Ark. 711, 109 S. W. 2d 676, where we said: ''This court recently said that the question of a continuance rests in the sound discretion of the trial court, and that its action will not be disturbed on appeal, except where there is a clear abuse of discretion which amounts to a denial of justice.'' Citing cases. We cannot say from this record that there was any manifest abuse of discretion by the trial court in this regard. It is true that appellant was given a speedy and public trial which the Constitution of this state guarantees him. In fact, it was more speedy than appellant desired. But the crime with which he stood charged was so inhuman and outrageous that swift justice appears to be proper under the circumstances.

We find no error and the judgment is accordingly affirmed.